No exceptions to the warrant requirement apply to the facts and circumstances of the present matter. Therefore, we find that the trial court did not err by granting defendant's motion to suppress. The writ is granted, but relief is denied.
FACTUAL BACKGROUND AND TESTIMONY
On November 24, 2017, Joshua Leyser telephoned 9-1-1 to report that he was a victim of a domestic disturbance. New Orleans Police Officer Derrick Burmaster reported to the scene in the Lower Garden District. Mr. Leyser informed Officer Burmaster that his boyfriend, Alexander Loicano, had "stomped [him] on the ground," injuring him. Officer Burmaster observed an injury to Mr. Leyser's forehead, which he believed corroborated his story. Mr. Leyser pointed out Mr. Loicano's car parked on a nearby corner, and identified Mr. Loicano, who was sitting inside his vehicle, as his attacker. Shortly thereafter, Mr. Loicano drove away. Officer Burmaster followed Mr. Loicano in his patrol car and "was able to pull [defendant] over."[1] Officer Burmaster then issued Mr. Loicano his Miranda warnings and arrested Mr. Loicano.
Officer Burmaster testified that Mr. Loicano left his vehicle's window rolled down and his car door unlocked, and had left his iPhone and wallet inside the car in plain view. Officer Burmaster informed Mr. Loicano he was going to "secure" the vehicle and Mr. Loicano objected, stating that it was fine to leave the vehicle unsecured. Officer Burmaster thought that seemed "odd." Nonetheless, Officer Burmaster opened the car door where he observed hypodermic syringes in the driver's door pocket; he "continued looking" and then "noticed" a baggie containing crystal methamphetamine. He collected the contraband and then secured Mr. Loicano's vehicle. Officer Burmaster testified that he decided to secure Mr. Loicano's vehicle to avoid a potential burglary investigation or future complaint.
Following Mr. Loicano's arrest, Officer Burmaster continued to investigate the initial complaint of domestic battery. Mr. Loicano denied he was the aggressor and, after interviewing Mr. Leyser, Officer Burmaster determined that Mr. Loicano was actually the victim in the conflict. Mr. Leyser was then arrested. However, Mr. *765 Loicano remained in police custody due to his possession of a controlled substance.
On cross-examination, Officer Burmaster testified that once Mr. Loicano pulled his vehicle over to the curb, Officer Burmaster used the megaphone in his patrol car to order Mr. Loicano to turn off his vehicle, throw his car keys outside, and extend his arms out of the window. He then ordered Mr. Loicano to step out of the vehicle, secured Mr. Loicano in handcuffs, and placed Mr. Loicano in the backseat of his patrol car. Officer Burmaster stated that, based on the information he received from the initial dispatched complaint and his brief interview with the complainant, he believed he had sufficient cause to arrest Mr. Loicano.
Officer Burmaster admitted that when he told Mr. Loicano that he was going to enter his vehicle to secure it, he had not seen, nor did he know, that Mr. Loicano left his iPhone and wallet inside the vehicle in plain view. Officer Burmaster recalled, using footage taken from his body-worn camera, that when he opened the driver's side door of Mr. Loicano's vehicle and started the ignition to roll up the windows, the vehicle's interior lights were also illuminated. Officer Burmaster testified that he did not know whether NOPD had a policy of locking the doors of unsecured vehicles to prevent future crime- because he could not recall his training- but he considered it "smart policing." He also admitted that he did not call a tow truck; he did not inquire whether Mr. Loicano knew anyone he could call to secure the vehicle for him, and he could not recall confirming that the vehicle belonged to Mr. Loicano. Officer Burmaster also testified that Mr. Loicano complied with all of his orders and did not make any suspicious movements. Officer Burmaster had not viewed any contraband in plain view before he opened Mr. Loicano's vehicle door and started the ignition.
On re-direct, Officer Burmaster testified that at some point, Mr. Loicano explained that his rear window had "an issue," and gave instructions on how to roll it up. He also testified that he discovered the narcotics underneath a pill bottle labeled with Mr. Loicano's name. On re-cross examination, Officer Burmaster admitted that at the time Mr. Loicano explained how to operate the rear window, he had already objected to the officer's entry into his vehicle. Officer Burmaster already expressed to Mr. Loicano that he planned to secure the vehicle despite the objections; and, in fact, had already begun to do so.
BODY CAMERA FOOTAGE
A review of the footage taken from Officer Burmaster's body camera reveals that Mr. Leyser accused Mr. Loicano of stomping his head and causing a laceration to his forehead and stated that Mr. Loicano left the scene in his vehicle. Mr. Leyser enters Officer Burmaster's patrol car and begins the process of making a report and providing his personal information. Officer Burmaster asked Mr. Leyser if a weapon was involved and the victim answered, "no." Shortly thereafter, Mr. Leyser appears to observe Mr. Loicano driving nearby and alerts Officer Burmaster. Officer Burmaster starts his engine and follows Mr. Loicano, although he has to speed up considerably due to the time lapse between being alerted and the time it took to start his vehicle. Mr. Loicano appeared to pull over immediately once Officer Burmaster illuminated his overhead lights.
Officer Burmaster used his megaphone to instruct Mr. Loicano to turn his engine off and throw his keys outside the vehicle, however, it seems that Mr. Loicano first attempted to comply by opening his vehicle door, but was instructed to remain *766 inside of his vehicle. Officer Burmaster then instructed Mr. Loicano to open his vehicle's door from the outside. Mr. Loicano asked several times why he was being arrested, and eventually Officer Burmaster explained he was under arrest for suspicion of committing domestic battery. Mr. Loicano attempted to explain his version of events, stating that Mr. Leyser had confiscated his phone to prevent him from calling the police, while Mr. Leyser simultaneously called the police from his own phone to report the domestic battery. After Mr. Loicano related his story, he asked Officer Burmaster again why he was being arrested and Officer Burmaster replied that Mr. Leyser placed the phone call and reported the incident first. Officer Burmaster added that Mr. Leyser appeared injured and Mr. Loicano had attempted to flee when he spotted the police and then attempted to give chase when pursued. Mr. Loicano explained that he had not fled; he was just driving by, within the speed limit, and had immediately pulled over once he saw the police lights illuminate.
Officer Burmaster told Mr. Loicano he was going to secure his vehicle and Mr. Loicano replied that it was locked and it was fine to leave it there. Officer Burmaster then noted that Mr. Loicano had left his window down, but Mr. Loicano replied that it was fine because he had nothing valuable inside. Officer Burmaster appeared to become very suspicious and asked Mr. Loicano several times what he was attempting to hide, although Mr. Loicano replied, "nothing." Officer Burmaster opened the door to Mr. Loicano's vehicle as wide as he could, and then started the ignition. He appeared to bend down and look inside the compartment at the bottom of the driver's door, although the compartment appeared very deep and the only thing visible in the footage is a piece of paper protruding out of the top. Officer Burmaster then stated, "Crystal meth," and pulled a small bag from the compartment.
Officer Burmaster then retrieved gloves and proceeded to empty the compartment, which contained several receipts, a pill bottle bearing Mr. Loicano's name, and around five or six syringes. Mr. Loicano insisted the drugs belonged to his boyfriend and stated he knew that his boyfriend used crystal meth, but that he did not. At that time, Officer Burmaster told Mr. Loicano he was being arrested for possession of the narcotics. Mr. Loicano again asked Officer Burmaster why he was being arrested for domestic battery instead of his boyfriend, so Officer Burmaster returned to Mr. Leyser's home and interviewed him again. Mr. Leyser ultimately revealed himself as the initial aggressor in the dispute. Officer Burmaster arrested Mr. Leyser for being the aggressor in the domestic battery incident. Officer Burmaster then obtained Mr. Loicano's statement, viewed the scene, retrieved Mr. Loicano's medications, returned to the police station, and performed administrative functions.
PROCEDURAL HISTORY
The State filed a bill of information charging Mr. Loicano with possession of methamphetamine and possession of drug paraphernalia, violations of La. R.S. 40:967(C)(2) and 40:1023, respectively. Mr. Loicano entered a plea of not guilty. Mr. Loicano filed an omnibus motion to, inter alia , suppress evidence and statements, and for a preliminary hearing. The trial court granted Mr. Loicano's motions to suppress evidence and statements, and did not find probable cause. The State noticed its intention to seek a writ and requested a stay. The trial court granted the stay. The State's timely writ application followed.
*767 STANDARD OF REVIEW
"[A]ppellate courts review trial court rulings under a deferential standard with regard to factual and other trial determinations, while legal findings are subject to a de novo standard of review." State v. Wells , 08-2262, p. 4 (La. 7/6/10), 45 So.3d 577, 580.
"The State bears the burden of proving the admissibility of the evidence seized without a warrant when the legality of a search or seizure is placed at issue by a motion to suppress evidence." Wells , 08-2262, p. 5, 45 So.3d at 581. "Trial courts are vested with great discretion when ruling on a motion to suppress." State v. Norals , 10-0293, p. 3 (La. App. 4 Cir. 7/30/10), 44 So.3d 907, 909. "Consequently, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion." Id. The Louisiana Supreme Court noted this Court's reasoning wherein we based the discretionary review on "considering the district court's opportunity to observe the witnesses and weigh the credibility of their testimony." Wells , 08-2262, p. 5, 45 So.3d at 581. "The State bears the burden of proving the admissibility of the evidence seized without a warrant when the legality of a search or seizure is placed at issue by a motion to suppress evidence." Wells , 08-2262, p. 5, 45 So.3d at 581.
TRIAL COURT
The State asserted that the evidence should be admissible pursuant to the inventory exception to the warrant requirement. The State contended that Officer Burmaster was securing the vehicle and property inside, which is the purpose of an inventory search of an impounded vehicle. The State also averred that it was reasonable for Officer Burmaster to enter Mr. Loicano's vehicle without consent and over Mr. Loicano's objections because Officer Burmaster did not want to leave Mr. Loicano's valuables in an unsecured vehicle, especially since Officer Burmaster had commanded Mr. Loicano to roll his car windows down immediately before he was ordered to exit the vehicle.[2] The State also maintained that Mr. Loicano consented to Officer Burmaster's entry into his vehicle when he explained how to roll up the rear window.
In granting Mr. Loicano's motion to suppress the evidence and statements, and finding no probable cause, the trial court stated that this was a close case, and expressed the following:
after reviewing the body cam footage and what's contained on that, finds that the - Mr. Loicano did not give consent to the officers to go into the car, clearly expressed that, and as such the Court grants the motion to suppress evidence, finding no probable cause, granting the motion to suppress evidence and motion to suppress statements.
MOTION TO SUPPRESS
The State maintains that the trial court abused its discretion by granting Mr. Loicano's motion to suppress the statement and evidence, while also finding no probable cause.
"The Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be *768 violated.' It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment." United States v. Jones , 565 U.S. 400, 404, 132 S.Ct. 945, 949, 181 L.Ed.2d 911 (2012) (quoting United States v. Chadwick , 433 U.S. 1, 12, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Thus, any governmental intrusion into private property, including a vehicle, for the purpose of obtaining information is considered a "search" under the Fourth Amendment. Jones , 565 U.S. at 404-05, 132 S.Ct. at 949.
"Reasonableness is always the touchstone in striking the balance between legitimate law enforcement concerns, such as officer safety, and protected individual privacy interests." State v. Francis , 10-1149, pp. 4-5 (La. App. 4 Cir. 2/16/11), 60 So.3d 703, 708 (citing State v. Bell, 09-0574, p. 14 (La. App. 4 Cir. 12/9/09), 28 So.3d 502, 512 ). Warrantless searches and seizures are per se unreasonable under the Fourth Amendment unless the governmental conduct is shielded by one of the few narrow exceptions to the warrant requirement. See State v. Surtain, 09-1835, p. 7 (La. 3/16/10), 31 So.3d 1037, 1043 (citing Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) ). The prosecution carries the burden of proving that a warrantless search is compatible with one of these exceptions and is thus reasonable under the Fourth Amendment. See La.C.Cr.P. art. 703 D. This requires that pertinent facts and circumstances be articulated through testimony by law enforcement officials at evidentiary hearings on motions to suppress. See State v. Temple, 02-1895, p. 5 (La. 9/9/03), 854 So.2d 856, 860.
State v. McClendon , 13-1454, pp. 4-5 (La. App. 4 Cir. 1/30/14), 133 So.3d 239, 244-45.
Protective Sweep/Search Incident to Arrest
The State asserts that the trial court abused its discretion in suppressing the evidence because Officer Burmaster had probable cause to believe that Mr. Loicano just committed a battery on his boyfriend and that he was armed with a knife. Therefore, Officer Burmaster was justified in conducting the traffic stop, ordering Mr. Loicano out of his vehicle, handcuffing him, and placing him into the backseat of the patrol car. Therefore, the State contends, Officer Burmaster would have been justified in subsequently conducting a protective sweep of the vehicle, making the discovery of the narcotics inevitable.[3]
However, the State did not argue to the trial court that Mr. Loicano was armed, nor present any facts that would lead the trial court to conclude that Officer Burmaster would have been reasonable in forming the belief that Mr. Loicano was armed, or that a protective weapons sweep of his vehicle was warranted under the circumstances. Nevertheless, we find this assertion lacks merit.
This Court discussed the protective Terry sweep exception in State v. Lockett , 12-1561 p. 11 (La. App. 4 Cir. 7/24/13), 120 So.3d 886, 893, quoting Michigan v. Long , 463 U.S. 1032, 1049-50, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983), quoting Terry v. Ohio , 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) :
"[Once a valid Terry stop of the vehicle occurs] the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational *769 inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons."
Mr. Loicano notes, however, that Officer Burmaster never testified that anyone accused Mr. Loicano of being armed with a knife, or that he believed Mr. Loicano was armed with a knife, or that he had probable cause to believe Mr. Loicano had been armed with a knife at any time. The only mention of the word "knife" throughout the entirety of the hearing occurred once during cross-examination, and does not appear to have been made in the context of an express accusation that Mr. Loicano had been armed with a knife. Moreover, as Mr. Loicano asserted the context in which the word "knife" was used in the dispatcher's notes (if, in fact, the word even was contained in the notes)[4] does not appear to be determinable:
Q: When you...spoke with the caller...where did the alleged incident take place?
A: In the apartment, upstairs apartment.
Q: And did he allege that a gun was involved?
A: I don't know. I don't recall that. There was a knife said (sic) in the dispatch notes.
Q: And did he say that to you in person? Did he mention-
A: I don't recall. I didn't review the domestic report.
Q: Okay. But you didn't include it in the report you wrote for this case, [defendant's] case?
A: No.
Moreover, a review of Officer Burmaster's police-worn body camera footage reveals that during his initial interview with Mr. Leyser, he specifically asked if a weapon had been used at any point and Mr. Leyser responded no weapons were involved. Thus, Officer Burmaster did not have probable cause to suspect Mr. Loicano was armed.
Further, the State contends in its reply that Officer Burmaster was justified because Mr. Loicano "was not under arrest at the time Officer Burmaster entered [Mr. Loicano's] vehicle. Rather, he was being detained pending the investigation ...." This assertion is incorrect. Officer Burmaster's bodycam footage clearly shows that Officer Burmaster informed Mr. Loicano of his Miranda Rights and after closing the back passenger door of the patrol car, told Mr. Loicano: "You're under arrest right now pending further investigation into the domestic violence allegations that are made against you." The United States Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant , 556 U.S. 332, 351, 129 S.Ct. 1710, 1723-24, 173 L.Ed.2d 485 (2009). As Mr. Loicano was handcuffed, under arrest, and in the backseat of Officer Burmaster's patrol car, there was no way for Mr. Loicano to reach anything in his vehicle. Further, as no weapons were alleged to be used in the domestic battery, there was no reason to believe that the vehicle contained evidence of the offense of arrest.
Inventory exception
The State maintained before the trial court that the evidence should be admissible under the inventory exception *770 to the warrant requirement, because Officer Burmaster was "securing the vehicle and its contents" against potential theft when he entered defendant's vehicle. Mr. Loicano countered that the inventory exception did not apply here, because it was not a true, valid, inventory search. As the Louisiana Supreme Court recognized in State v. Escoto , 09-2581, p. 5 (La. 7/6/10), 41 So.3d 1160, 1163 :
In Louisiana, we have adopted the United States Supreme Court's reasoning on the issue of inventory searches. [ State v.] LaRue, 368 So.2d [1048] at 1050 [La. 1979]. Additionally, in State v. Jewell, this court held, "[a]n essential requirement to a valid inventory search is that the police must have acted in good faith in conducting the inventory, and must not have used the inventory procedure as a subterfuge for a warrantless search." 338 So.2d 633, 638 (La.1976) (quoting Inventory Search of Impounded Vehicles, 48 A.L.R.3d 537, 544 (1973) ). This court examines inventory searches under the totality of the circumstances to determine if a truly valid inventory search has taken place. LaRue , 368 So.2d at 1051. Traditionally, this court has considered the following factors in determining whether a true inventory search has taken place: (1) Whether the vehicle could not have remained safely where it was located; (2) whether the search was conducted in the field; (3) whether a tow truck was called before the search commenced; (4) whether formal impoundment procedures were followed; (5) whether the vehicle operator was asked if he consented to a search, if the car contained any valuables, or if he would consent to a waiver of the protections afforded by an inventory search; (6) whether the operator was given an opportunity to make arrangements for someone to pick up the vehicle for them. State v. Sims, 426 So.2d 148, 153 (La.1983).
In the instant case, although the State contended that the vehicle could have been stolen, therefore it could not have safely remained legally parked on the curb, Mr. Loicano asserted that the vehicle was not impeding traffic, not running, and Officer Burmaster was in possession of the keys, therefore the vehicle would not have accidentally rolled into traffic. The evidence elicited at the hearing also revealed that the search was conducted in the field, exactly where Mr. Loicano parked the vehicle. Officer Burmaster did not call a tow truck or follow formal impoundment procedures. Further, Mr. Loicano expressly refused consent to enter the vehicle, and Officer Burmaster did not know valuables were inside the vehicle when he indicated his intent to enter it. Moreover, Mr. Loicano did not expressly waive the protections afforded by an inventory search when he told Officer Burmaster it was fine to leave his vehicle the way it was and Mr. Loicano was not given an opportunity to make arrangements with someone else to secure his vehicle for him. See State v. Killcrease , 379 So.2d 737, 739 (La. 1980) ("If the defendant could have easily made arrangements for the vehicle other than having it impounded, or if he had been willing to waive his rights against the law enforcement agency for failure to guard against loss of his valuables, a justification for the inventory search would not have existed.")
Therefore, the trial court did not abuse its discretion in finding that the inventory exception was inapplicable in the instant case as an invalid justification for the warrantless entry into Mr. Loicano's vehicle. This conclusion is further supported by Officer Burmaster's admission that he became suspicious that Mr. Loicano was hiding contraband in his vehicle when he refused to consent to Officer Burmaster's *771 warrantless entry. Additionally, although Officer Burmaster testified that he wanted to secure Mr. Loicano's vehicle because the windows were rolled down, Mr. Loicano suggests that that purpose was pretextual, as Officer Burmaster had, himself, caused the vulnerability of Mr. Loicano's vehicle when he commanded Mr. Loicano to roll his windows down just before he was commanded to exit the vehicle and then immediately taken into custody. Hence, but for Officer Burmaster's commands, and Mr. Loicano's submission to his authority, the vehicle would not have been rendered insecure, and Officer Burmaster would not have had a stated cause to enter it.
Community caretaker
The State avers that Officer Burmaster's entry into Mr. Loicano's vehicle to secure it and its contents against potential theft over Mr. Loicano's express objection, should nonetheless be justified under the "community caretaker" exception to the warrant requirement. The State contends that Officer Burmaster was entitled to enter Mr. Loicano's vehicle, start the ignition, and roll up the windows "in order to secure the vehicle and its contents" from potential theft under the "community caretaker" or "public safety" exception to the warrant requirement. The State describes the caretaker function of police officers as a duty "to aid individuals who are in danger of physical harm [and] assist those who cannot care for themselves." Such duties include "delivering emergency messages, giving directions, searching for lost children, assisting stranded motorists, and rendering first-aid." The State further asserts that when police officers are carrying out their duties as community caretakers, "for some purpose not directly tied to the objective of detecting criminal activity," and inadvertently discover evidence of a crime during the "reasonable and good faith" exercise of their community caretaker function, the evidence should be admissible in court.
It is not clear, however, that the "community caretaker" function of the police is a stand-alone exception to the warrant requirement. Instead, the function of police as community caretakers provides the rational basis for several existing exceptions to the warrant requirement, such as the inventory exception discussed above, and to protect the public at large in exigent circumstances. The United States Supreme Court discussed this rationale in South Dakota v. Opperman , 428 U.S. 364, 368-71, 96 S.Ct. 3092, 3097-98, 49 L.Ed.2d 1000 (1976) :
In the interests of public safety and as part of what the Court has called "community caretaking functions," Cady v. Dombrowski, supra , 413 U.S. [433] at 441, 93 S.Ct. [2523] at 2528 [37 L.Ed.2d 706 (1973) ], automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.
When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to *772 three distinct needs: the protection of the owner's property while it remains in police custody, United States v. Mitchell , 458 F.2d 960, 961 (CA9 1972) ; the protection of the police against claims or disputes over lost or stolen property, United States v. Kelehar , 470 F.2d 176, 178 (CA5 1972) ; and the protection of the police from potential danger, Cooper v. California, supra , 386 U.S. [58], at 61-62, 87 S.Ct. [788] at 790 [17 L.Ed.2d 730 (1967) ]...
These caretaking procedures have almost uniformly been upheld by the state courts, which by virtue of the localized nature of traffic regulation have had considerable occasion to deal with the issue. Applying the Fourth Amendment standard of "reasonableness," the state courts have overwhelmingly concluded that, even if an inventory is characterized as a "search," the intrusion is constitutionally permissible.
Thus, the community caretaking function of the police rationalizes the inventory search exception, and is not a separate exception to the warrant requirement in and of itself, and cannot, therefore, independently validate an otherwise invalid inventory search.
Exigent Circumstances
The State also asserts that exigent circumstances were present such that a police officer's warrantless entry into the vehicle was necessary to prevent the vehicle itself from endangering the public. For example, in State v. Arnold , 11-0626, pp. 1-2 (La. 4/27/11), 60 So.3d 599, 600, n.2, the court recognized "that police officers, particularly in dealing with vehicular traffic, do have safety and welfare duties apart from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." The Arnold court found that after police officers arrested the defendant for a traffic violation, an officer's entry into defendant's vehicle for the purpose of securing it by rolling up the windows and turning off the engine was authorized in the process of performing this "caretaking" function. 11-0626, p. 1, 60 So.3d at 600.
The State also cites to a recent Supreme Court opinion, State v. Perique , 18-0981, (La. 6/28/18), 248 So.3d 317, 318-19,[5] which held that the warrantless search and seizure of a weapon from the defendant's vehicle after placing the defendant under arrest was not unreasonable because there was "an immediate concern for the safety of the officers and the general public." The Court found the circumstances exigent because "[t]he defendant's vehicle obstructed traffic as it was parked near a fuel pump at a gas station located at a busy intersection," and the officer had observed the defendant "engage in furtive movements near the driver's door and seat." Perique , 18-0981, pp. 1-2, 248 So. 3d at 318. Thus, the officer's entry into the vehicle for relocation to an area where it would not obstruct traffic was immediately necessary, and his search under the driver's seat was reasonable as a "protective sweep" as he had cause to suspect defendant had been concealing a weapon in the area he was observed reaching. Id.
Though some of the facts of Arnold and Perique are similar, the cases are distinguishable for several reasons. In both Arnold and Perique , the vehicles were situated in circumstances that appeared so exigent that immediate action by the officer was required. See Kentucky v. King , 563 U.S. 452, 460, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011) (The presumption of unreasonableness of a warrantless search and seizure may be overcome when *773 " 'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.' " (quoting Mincey v. Arizona , 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) ) ). In Arnold , the vehicle was left running with the keys in the ignition and the windows rolled down, such that any member of the public could enter the vehicle and drive it, or the vehicle could have easily rolled into traffic on its own. Arnold , 11-0626, p. 1, 60 So.3d at 600. In Perique , the vehicle was blocking access to a gas pump, and the officer had observed defendant make suspicious movements indicating the possible presence of a weapon. 18-0981, pp. 1-2, 248 So. 3d at 318.
In the case sub judice however, the only exigency the State points to is the fact that the windows of Mr. Loicano's vehicle were rolled down. The additional circumstances requiring immediate action in Arnold , are not present in the instant case. Officer Burmaster was in possession of Mr. Loicano's car keys and the engine was not running. Additionally, Officer Burmaster admitted that the vehicle was not obstructing traffic and had been legally parked on the curb. Therefore, the officer did not need to enter the vehicle to relocate it, as was necessary in Perique . Officer Burmaster did not observe Mr. Loicano make any suspicious or furtive movements that would have led him to suspect that Mr. Loicano had hidden a weapon in the vehicle.
"To justify a warrantless entry, the exigent circumstances must be known to the officers 'at the time of the warrantless entry' and cannot be based on evidence discovered during the search." State v. Warren , 05-2248, p. 10 (La. 2/22/07), 949 So.2d 1215, 1224 (quoting United States v. Rivera , 248 F.3d 677, 680-81 (7th Cir.), cert. denied, 534 U.S. 923, 122 S.Ct. 277, 151 L.Ed.2d 203 (2001) ). Additionally, pursuant to "the 'police-created exigency' doctrine ... police may not rely on the need to prevent destruction of evidence when that exigency was 'created' or 'manufactured' by the conduct of the police." King , 563 U.S. at 461, 131 S.Ct. at 1857.
As Mr. Loicano notes, and as we discussed above, the exigency Officer Burmaster stated he was ameliorating when he entered Mr. Loicano's vehicle only existed due to Mr. Loicano's obedience of Officer Burmaster's command to throw his keys from the vehicle without opening the vehicle door. As such, and due to the lack of exigent circumstances, we do not find that this exception to a warrantless search applies.
DECREE
For the above-mentioned reasons, we do not find that the trial court abused its discretion by granting Mr. Loicano's motion to suppress the evidence and statements and by finding no probable cause. The exceptions for a warrantless search do not apply to the facts and circumstances of this case. According, the writ is granted, but relief is denied.
WRIT GRANTED; RELIEF DENIED

Mr. Loicano parked his vehicle legally, next to the curb.

The trial court clarified with all parties that Officer Burmaster conducted the vehicle stop, ordered Mr. Loicano to roll his windows down, then immediately ordered Mr. Loicano out of the vehicle. Once Mr. Loicano exited his vehicle, Officer Burmaster approached, handcuffed, arrested him, and secured him in the back of the patrol car. All parties involved agreed this was the timeline and order of events.

The State asserted this argument for the first time in its writ application.

The dispatcher notes were not submitted as evidence.

Perique was decided after the trial court ruled on Mr. Loicano's motion to suppress.