STATE OF LOUISIANA      *      NO. 2019-KA-0482

VERSUS      *

     COURT OF APPEAL

MALIK K. LAWSON      *

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 542-667, SECTION "D"
Honorable Paul A. Bonin, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge
Tiffany G. Chase)

Leon Cannizzaro
District Attorney
Donna Andrieu
Kyle Daly
DISTRICT ATTORNEY'S OFFICE
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

     COUNSEL FOR STATE/APPELLEE

Meghan Harwell Bitoun
Louisiana Appellate Project
P. O. Box 4252
New Orleans, LA 70178-4252

     COUNSEL FOR DEFENDANT/APPELLANT

     **CONVICTION AFFIRMED; REMANDED.**

     **NOVEMBER 6, 2019**

This is an appeal of the district court's denial of a Motion to Suppress the Evidence and Statement filed by defendant, Malik Lawson ("Defendant"). On January 10, 2019, Defendant entered a *Crosby* plea of guilty[1] to the charges against him, while reserving his right to appeal the district court's decision to deny his motion to suppress.

After reviewing the record and applicable law, we find that the district court properly denied Defendant's motion to suppress, thereby affirming Defendant's conviction. Finding, however, errors in Defendant's sentencing, we remand the matter to the district court to make the appropriate corrections consistent with this opinion.

On September 7, 2018, the State filed a bill of information charging Defendant with one count of possession of a firearm by a felon, a violation of La. R.S. 14:95.1, and one count of resisting an officer, a violation of La. R.S. 14:108. On September 12, 2018, Defendant entered pleas of not guilty. On September 17,

---

[1] "*State v. Crosby*, 338 So.2d 584 (La.1976), allows a Defendant to enter a guilty plea, but reserve his or her right to appeal the denial of a motion to suppress the evidence." *State v. Hall*, 14-0738, p. 1 n. 3 (La.App. 4 Cir. 2/18/15), 160 So.3d 1060, 1062.

2018, Defendant filed motions for discovery; to preserve evidence; for suppression of statements, evidence, and identification; and for preliminary examination.

On November 15, 2018, the district court heard Defendant's motion to suppress and conducted a preliminary examination. Finding probable cause, the district court took the motion to suppress under advisement. On January 7, 2019, the district court denied Defendant's motion to suppress. On January 9, 2019, Defendant filed motions to reconsider the motion to suppress and supplement the record, and request for a stay. All motions were denied. On January 10, 2019, Defendant withdrew his pleas of not guilty and pled guilty as charged, reserving his right to appeal the denial of his motion to suppress as per *Crosby*.

The court sentenced Defendant to five years in the custody of the Department of Corrections without the benefit of probation, parole, or suspension of sentence for count one, possession of a firearm by a convicted felon. As to count two, resisting an officer, Defendant was sentenced to six months at Orleans Justice Center without benefit of probation, parole, or suspension of sentence. Defendant was given credit for time served with both sentences to run concurrently.

The record reveals two patent errors. First, the sentence for resisting an officer was imposed without benefit of probation, parole, or suspension of sentence. This is contrary to the sentencing requirements of La. R.S. 14:108.[2] The matter is remanded to the district court to remove restrictions on the sentence.

---

[2] La. R.S. 14:108(C) states: "Whoever commits the crime of resisting an officer shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both."

Second, the sentence imposed under La. R.S. 14:95.1, possession of a firearm by a felon, is illegally lenient because it did not impose the fine mandated by law. The district court correctly imposed a sentence of not less than five years without the benefit of probation, parole, or suspension of sentence but without a fine.

La. R.S. 14:95.1(B) provides that:

> Whoever is found guilty of violating the provisions of [La. R.S. 14:95.1] shall be imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence **and** be fined not less than one thousand dollars nor more than five thousand dollars. (Emphasis added.)

*See also State v. Watson*, 13-1532, p. 6 (La.App. 4 Cir. 8/6/14), 147 So.3d 1169, 1172-73 (the fine imposed by La. R.S. 14:95.1 is mandatory and the trial judge is without discretion to waive it).

Therefore, we remand this case for the district court to correct the sentence under La. R.S. 14:108 to remove restrictions and impose a fine under La. R.S. 14:95.1(B).

Defendant raises two assignments of error, however, the first assigned error is closely related to the second.[3] Thus, we address both in our discussion of whether the police conducted an illegal warrantless search (assignment of error number two).

At the outset, we note our well-settled jurisprudence that an appellate court is to review the district court's findings of fact on a motion to suppress under a

---

[3] The first assigned error is that the district court erred when it denied Defendant's motion to reconsider ruling on motion to suppress, while the second is that the search of his car was an illegal warrantless search rather than an inventory search.

clearly erroneous standard, while the review of the district court's ultimate determination of Fourth Amendment reasonableness is *de novo*. *State v. Everett*, 13-0322, p. 4 (La.App. 4 Cir. 3/26/14), 156 So.3d 705, 709 (citing *State v. Dorsey*, 00-2331, p. 1 (La.App. 4 Cir. 1/24/01), 779 So.2d 1008, 1009. "On mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts *de novo*." *Everett*, 13-0322, pp. 4-5, 156 So.3d at 709. Furthermore, a district court's decision as to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion. *Id*. (citing *State v. Wells*, 08-2262, p. 5 (La. 7/6/10), 45 So.3d 577, 581). When a district court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not disturb those findings unless there is no evidence to support them. *State v. Thompson*, 11-0915, pp. 13-14 (La. 5/8/12), 93 So.3d 553, 563; *Wells*, 08-2262, p. 5, 45 So.3d at 581.

It is well settled that "[t]he State bears the burden of proving the admissibility of the evidence seized without a warrant when the legality of a search or seizure is placed at issue by a motion to suppress evidence. La. C.Cr.P. art. 703(D)."[4] *Wells*, 08-2262, p. 5, 45 So.3d at 581; *State v. Loicana*, 18-0497, pp. 6-7

---

[4] La. C.Cr.P. art. 703(D) provides: "On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except **that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.**" (Emphasis added.)

4

(La.App. 4 Cir. 8/22/18), 254 So.3d 761, 767, *writ denied,* 18-1545 (La. 12/3/18), 257 So.3d 192.

"The Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment." *United States v. Jones*, 565 U.S. 400, 404, 132 S.Ct. 945, 949, 181 L.Ed.2d 911 (2012); *Loicana*, 18-0497, p. 8, 254 So.3d at 768. Any governmental intrusion into private property, including a vehicle, for the purpose of obtaining information is considered a "search" under the Fourth Amendment. *Jones*, 565 U.S. at 404-05, 132 S.Ct. at 949. As we have stated:

> "Reasonableness is always the touchstone in striking the balance between legitimate law enforcement concerns, such as officer safety, and protected individual privacy interests." *State v. Francis*, 10-1149, pp. 4-5 (La. App. 4 Cir. 2/16/11), 60 So.3d 703, 708 (citing *State v. Bell*, 09-0574, p. 14 (La. App. 4 Cir. 12/9/09), 28 So.3d 502, 512). Warrantless searches and seizures are *per se* unreasonable under the Fourth Amendment unless the governmental conduct is shielded by one of the few narrow exceptions to the warrant requirement. *See State v. Surtain*, 09-1835, p. 7 (La. 3/16/10), 31 So.3d 1037, 1043 (citing *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). The prosecution carries the burden of proving that a warrantless search is compatible with one of these exceptions and is thus reasonable under the Fourth Amendment. *See* La. C.Cr.P. art. 703 D. This requires that pertinent facts and circumstances be articulated through testimony by law enforcement officials at evidentiary hearings on motions to suppress. *See State v. Temple*, 02-1895, p. 5 (La. 9/9/03), 854 So.2d 856, 860.

*State v. McClendon*, 13-1454, pp. 4-5 (La.App. 4 Cir. 1/30/14), 133 So.3d 239, 244-45.

In *State v. Escoto*, 09-2581, p. 5 (La. 7/6/10), 41 So.3d 1160, 1163, the

Supreme Court stated:

> In Louisiana, we have adopted the United States Supreme Court's reasoning on the issue of inventory searches. [*State v.*] *LaRue*, 368 So.2d [1048] at 1050 [La. 1979]. Additionally, in *State v. Jewell*, this court held, "[a]n essential requirement to a valid inventory search is that the police must have acted in good faith in conducting the inventory, and must not have used the inventory procedure as a subterfuge for a warrantless search." 338 So.2d 633, 638 (La.1976) (quoting *Inventory Search of Impounded Vehicles*, 48 A.L.R.3d 537, 544 (1973)). This court examines inventory searches under the totality of the circumstances to determine if a truly valid inventory search has taken place. *LaRue*, 368 So.2d at 1051. Traditionally, this court has considered the following factors in determining whether a true inventory search has taken place: (1) Whether the vehicle could not have remained safely where it was located; (2) whether the search was conducted in the field; (3) whether a tow truck was called before the search commenced; (4) whether formal impoundment procedures were followed; (5) whether the vehicle operator was asked if he consented to a search, if the car contained any valuables, or if he would consent to a waiver of the protections afforded by an inventory search; (6) whether the operator was given an opportunity to make arrangements for someone to pick up the vehicle for them.

In the case *sub judice*, the district court found that the firearm seized was

done so as police were conducting a valid inventory search of the vehicle prior to

towage. In arriving at this conclusion, the district court discussed the six factors

enumerated above. Although the court found factors (1) and (2) inapplicable to the

facts presented, with regard to the rest of the factors, it stated:

> Factor (3) "whether a tow truck was called before the search commenced". The record is silent on this factor, but the Notice of Violation reveals that a private towing firm, Green Acres Towing, would be the location of impoundment.
> Factor (4) "whether formal impound procedures were followed". The trooper testified that he followed the procedures, some of which he detailed in his testimony. As noted his testimony was not contradicted.
> Factor (5) "whether the vehicle operator was asked if he consented to the search, if the car contained any valuables, or if he would consent to a waiver of the protections afforded by an inventory

6

search". There is no suggestion that the troopers sought permission to search or a waiver of the protections of an inventory search, however, I do not weigh this factor heavily at all in this case because of the Defendant's lack of cooperation in following police instructions at the time of the minor traffic stop and his ensuing resistance to his arrest.

Factor (6) "whether the operator was given an opportunity to make arrangements for someone to pick up the vehicle for them". This factor seems inapplicable in the case of an uninsured motor vehicle which would not be allowed back on the road.

Here, the trooper looked in the glove compartment of Mr. Lawson's car and observed a gun. Such circumstances do not implicate the kind of overreaching which would make a purported inventory search suspect as a subterfuge for a search for incriminating evidence. Compare *State v. Jewell*, 338 So.2d 633, 639 (La. 1976) ("Additionally, the contraband was inside of an excedrine [sic] bottle, an unlikely place for anything of value which an owner could explain was lost or stolen… the excedrin bottle was itself found in an ashtray on the dash of the car, also an unlikely place for an owner to keep anything of value.")

Under the "totality of the circumstances," *Escoto*, 09-2581, p. 5, 41 So. 3d at 1163, I find that the troopers conducted a good faith inventory search of Mr. Lawson's vehicle and, accordingly, there was no violation of either the Fourth Amendment or La. Const. Art. 1, section 5. I now DENY the Defendant's motion to suppress the gun found during the inventory search.

With these principles in mind, we have reviewed the record and find that the district court correctly denied Defendant's motion to suppress.

Because Defendant pled guilty, no trial took place; thus, we rely on the facts presented at the hearing on the motion to suppress.

The sole witness to testify was Louisiana State Police ("LSP") Trooper Jack Uhle, Jr., who had been a member of the LSP for five years. Trooper Uhle was a member of Troop N, a proactive unit that looks for any type of violent crimes, guns, weapons, or drugs in the city of New Orleans. His investigations consist primarily of conducting stops, including traffic stops if traffic infractions are observed.

7

On August 22, 2018, Trooper Uhle stopped Defendant for failure to stop at a red light. Two police units were involved in the stop. As Trooper Uhle and other officers approached, Defendant was instructed to exit the vehicle. For officer and violator safety, LSP procedure requires the driver to step out of the vehicle. Defendant was aware of the officers' directive and was responsive, yet did not comply. After a couple of minutes, Defendant opened the vehicle's door. The officers' suspicions were heightened because Defendant had been told multiple times to exit the vehicle and the officers saw what they believed to be a firearm in between the vehicle's center console and the driver's seat.[5] Once Defendant exited the vehicle, Trooper Verret and Detective Miceli tried to handcuff Defendant to detain him and secure the scene due to the alleged weapon in the vehicle. Defendant both verbally and physically resisted the police. Because of Defendant's actions, he was arrested for resisting an officer.

After Defendant was placed in handcuffs, he was advised of his *Miranda* rights. The officers determined that the object seen between the console and the driver's seat was not a weapon. The vehicle was uninsured. After Defendant was placed under arrest, a  decision was made to tow the vehicle due to Defendant's actions and the vehicle's lack of insurance.[6]

---

[5] St. Tammany Detective Miceli, who was patrolling with LSP Trooper Verret in the second car, was close to the hood of Defendant's vehicle, Trooper Uhle was by the passenger side, and Trooper Verret was on the driver's side of the vehicle.

[6] Louisiana law requires liability insurance on all automobiles (*see* La. R.S. 32:863.1A). "If the operator of a motor vehicle is unable to show compliance with the provisions of this Part by displaying the required document when requested to do so, the motor vehicle **shall be impounded**…" La. R.S. 32:863.1 C(1)(a) (emphasis added). *See also South Dakota v. Opperman*, 428 U.S. 364, 368 (1976) ("In the interest of public safety and as a part of what the Court has called 'community caretaking functions,' *Cady v. Dombrowski*, [413 U.S. 433, 441 (1973)], automobiles are frequently taken into police custody.")

When the State asked what would happen to the car following Defendant's arrest, Trooper Uhle responded, "If we were unable to release it to somebody else, somebody with a valid driver's license, we would tow it 100 percent of the time." Before towing a vehicle, LSP policy requires that an inventory sheet be filled out because the LSP is liable for any valuables inside the vehicle once possession is taken. When the inventory was conducted, a revolver was located in the glove box with two rounds inside. The revolver had not been reported stolen.

Once the weapon was found, Trooper Uhle placed Defendant in the back seat of his police car and re-advised Defendant of his *Miranda* rights. Defendant told the officers that the vehicle belonged to him and he was its only driver but that he gave people rides. He denied knowing the firearm was in the glove box and could not give a reason for its presence.

Under cross-examination, Trooper Uhle confirmed that the traffic stop occurred at 8:30 p.m. at Higgins and Louisa Streets. It was dusk. The lights and sirens on Trooper Uhle's vehicle were activated and Defendant pulled off the street onto its shoulder. Three officers approached the vehicle at the same time. Defendant was ordered to step out of the vehicle. When Defendant did not exit the vehicle, he was ordered to keep his hands up. The troopers had their weapons drawn. Defendant appeared to hear the officers but did not cooperate. Ultimately, the door was opened and Defendant exited the vehicle. Defendant was placed on the ground and handcuffed.

Trooper Verret found the firearm in the glove compartment while conducting an inventory search. Defendant had no outstanding warrants for his arrest, however, he had a previous felony conviction. Defendant never admitted to owning the firearm and denied knowing it was in the vehicle.[7]

On re-direct examination, Trooper Uhle testified the car was towed because Defendant stated it had mechanical issues and Trooper Uhle was concerned someone could access the car if it was left on the side of the road. In addition, the State asked:

> Q. You eventually towed the car, correct, or the car was towed?
> A. Yes.
> Q. Because that's department policy?
> If it had not been department policy, would the car have been left on the side of the road?
> A. I don't leave cars on the side of the road.

Trooper Uhle confirmed that the firearm was found in the glove compartment during an inventory search. Defendant was given a notice of violation for having no insurance. Trooper Uhle also stated the glove compartment would eventually be checked to locate any type of vehicle documents.

Following Trooper Uhle's testimony, the district court viewed the body camera video worn by Troopers Uhle and Verret during the traffic stop and inventory of the vehicle's contents. The video supported Trooper Uhle's testimony.

Reviewing the record, and more particularly, considering the totality of the circumstances, we find the police had sufficient grounds upon which to conduct an inventory search. Initially we note a valid stop of Defendant's vehicle was made

---

[7] Later testing of the firearm found no forensic evidence linking Defendant to the revolver.

10

after he failed to obey a red light. Next, the police saw what they believed to be a firearm in the vehicle within reach of Defendant. Once removed from the vehicle, Defendant resisted attempts to handcuff him in order to secure the scene. Finally, the vehicle was uninsured, which under the law, requires impounding. LSP policy states that before a vehicle is towed, an inventory sheet must be completed; such requires a search of the entire vehicle. It was only then that the firearm was discovered.

We further find, based on the totality of the circumstances, that the police acted reasonably and were in good faith in conducting the inventory search and did not use the inventory procedure as a subterfuge for a warrantless search. Under Louisiana law, a vehicle without liability insurance must be towed, which necessitates an inventory search. We find that the district court did not err when it denied Defendant's motion to suppress. This assignment of error has no merit.

Defendant also argues that the district court abused its discretion when it denied his motions to reopen the motion hearing and supplement the record with documents relating to inventory searches conducted by the LSP. The motion to reconsider was filed one day before Defendant entered his *Crosby* plea. The record does not reflect that Defendant reserved his right to appeal the denial of these motions.

In any event, in *State v. Cole,* 434 So.2d 1103 (La. 1983), the Court held that the issue of whether to permit a defendant to reopen a suppression hearing prior to trial "properly addresses itself to the discretion of the trial judge." *Id*. *See also*

*State v. Mims,* 97-1500, p. 25 (La.App. 4 Cir. 6/21/00), 769 So.2d 44, 63. We find that the district court did not abuse its discretion by denying Defendant's motions to reopen the hearing on the suppression motion and supplement the record. This argument has no merit.

Accordingly, we affirm Defendant's conviction. We do, however, remand this matter to the district court to correct the sentences as discussed above in the opinion.

**CONVICTION AFFIRMED; REMANDED.**